# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OTIS R. MCKINLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2631** |
| **NATE CAIN** | **SECTION "F"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Otis R. McKinley, is currently incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2]  More than 30 years ago, on September 9, 1980, McKinley and two co-defendants, Robert J. Schriver and Jennifer L. Hicks, were charged by bill of information in Jefferson Parish with armed robbery.[3]  The following summary of facts is based on my review of the trial transcript.[4]

Sydney Foreman testified that on August 15, 1980, she was employed at a One Hour Martinizing Cleaners store, when two men, one white and one black, entered the store and robbed her at gunpoint.[5] She positively identified McKinley from a photographic lineup as the African-American man who robbed her.[6]

Detective Sergeant Vincent Lamia investigated, obtained a search warrant for McKinley's house and subsequently arrested McKinley for the armed robbery.[7]

_____

[2]Rec. Doc. No. 1.

[3]State Record Vol. 1 of 12.

[4]Because McKinley was convicted and sentenced before July 1, 1982, the Louisiana Supreme Court had exclusive appellate jurisdiction. See La. Const. Art. 5, § 5(E). The Louisiana Supreme Court affirmed McKinley's conviction without opinion. State v. McKinley, 414 So.2d 374 (La. 1982) (per curiam); State Record Vol. 10 of 12. Thus, there is no Louisiana state court opinion that summarizes the facts.

[5]State Record Vol. 8 of 12, pp. 69-70.

[6]Id. at p. 77.

[7]Id. at pp. 95-106.

Detective Lamia retrieved a garment from McKinley's house, which Sydney Foreman identified as the shirt worn by the African-American perpetrator.[8] While in custody and after being advised of his rights, McKinley confessed that he had participated in the robbery.[9]

McKinley's trial began on January 12, 1981, with jury selection.[10] On January 13, 1981, before trial testimony commenced, a hearing was conducted, following which the state trial court denied McKinley's motions to suppress the photographic identification, the evidence obtained from his house and his confession.[11] On January 14, 1981, the jury returned a guilty verdict on the armed robbery charge.[12] On March 13, 1981, the state trial court sentenced McKinley to 50 years in prison, stating: "I believe that the proper sentence in this case should be that Mr. McKinley should serve at the Louisiana Department of Corrections at hard labor for a period of fifty years and be given credit for time served."[13]

---

[8] Id. at p. 107.

[9] Id. at pp. 108-09; 157–60.

[10] State Record Vol. 7 of 12.

[11] Id. at pp. 14 and 55.

[12] State Record Vol. 9 of 12, p. 58.

[13] State Record Vol. 5 of 12, March 13, 1981, sentencing hearing transcript, p. 15.

On June 8, 1981, a hearing on the State's multiple offender bill was held, at which a fingerprint expert compared McKinley's fingerprints, taken on the date of the hearing, with fingerprints taken in connection with a prior conviction and positively identified both sets of prints as belonging to Otis McKinley.[14]  Thereafter, the court found that McKinley was a multiple offender, stating: "Okay, the Court is satisfied that the evidence shown today, together with the argument of counsel, that the judgment should be granted as prayed."[15]  On June 10, 1981, the state trial court sentenced McKinley as a multiple offender, stating:

> Okay, then, the Court, at this time, will vacate the sentence which was rendered in this particular case and render another judgment – another sentence for the same amount of time, fifty years, only he's sentenced as a multiple offender, and he's remanded to the Louisiana Department of Corrections for the execution of that sentence, to be given credit for time served.[16]

On direct appeal to the Louisiana Supreme Court, McKinley's appointed counsel alleged one error; specifically, that the trial court erred in denying "defense counsel's

---

[14]State Record Vol. 10 of 12, June 8, 1981 hearing transcript, p. 8.  In its response, the State represents that McKinley "pled guilty to the multiple bill." Rec. Doc. No. 11, p. 1. The June 8, 1981 transcript reflects otherwise.

[15]Id. at p. 21.

[16]Id., June 10, 1981 hearing transcript, p. 10. No mention was made as to whether McKinley's sentence should be served with or without benefit of parole, probation or suspension of sentence.

motion to quash the double billing of the defendant."[17]  On May 17, 1982, the Louisiana Supreme Court affirmed McKinley's conviction.[18]  He did not petition the United States Supreme Court for a writ of certiorari.

Seven years later, in July 1989, McKinley filed his first application for post-conviction relief in which he asserted two claims: (1) His sentence was excessive. (2) His habitual offender adjudication was unconstitutional.[19]  On January 30, 1990, the state district court denied McKinley relief.[20]  On September 24, 1991, McKinley filed another post-conviction application, asserting the following claims: (1) The trial court failed to determine the voluntariness of his confession before admitting it into evidence. (2) He received ineffective assistance of counsel.[21]  On December 9, 1991, the state district court again denied McKinley relief.[22]

After his post-conviction applications were denied, McKinley filed motions challenging his sentence.  The odd basis of one motion was that the state trial court, in

---

[17]State Record Vol. 10 of 12.

[18]State v. McKinley, 414 So.2d 374 (La. 1982) (per curiam); State Record Vol. 10 of 12.

[19]State Record Vol. 10 of 12.

[20]Id.

[21]State Record Vol. 2 of 12.

[22]McKinley did not seek relief from the Louisiana Supreme Court in connection with the state trial court's denials of his applications for post-conviction relief.

sentencing him to 50 years as a multiple offender, had been illegally lenient in failing to specify that his sentence was to be served without benefit of parole, probation or suspension of sentence.[23]  Having received no relief at the district court level, McKinley filed writ applications, Case Nos. 1993-KH-2213 and 1995-KH-2372, which the Louisiana Supreme Court granted in part. The supreme court ordered: "The case is remanded to the district court for compliance with State v. Harris, 93-1098 (La. 1/5/96), 665 So.2d 1164.[24]  In all other respects the applications are denied."[25]

In July 1997, in accordance with a directive from the Louisiana Supreme Court requiring the district court to comply with the above-referenced order, a state district judge made the required ministerial changes to the sentence of the trial judge, specifying that McKinley's 50-year sentence was to be served without benefit of parole, probation or suspension of sentence.[26]

---

[23]State Record Vol. 11 of 12.

[24]In State v. Harris, the Louisiana Supreme Court set forth three options which may be used in addressing a motion to correct an illegally lenient sentence. (1) The court which imposed the illegally lenient sentence can make the necessary changes in the minutes, without bringing the inmate to court. (2) A different judge may "make the same ministerial corrections to a sentence imposed by a predecessor unless he or she entertains reasonable doubt as to the intent of the original sentencing judge and the sentence imposed by the original sentencing judge." (3) A district judge may vacate the sentence originally imposed and resentence the inmate in open court.

[25]State ex rel. McKinley v. Whitley, 667 So.2d 1040, No. 1993-KH-2213 (La. 1996); State ex rel. McKinley v. Cain, 667 So.2d 1041, No. 1995-KH-2372 (La. 1996); State Record Vol. 3 of 12.

[26]State Record Vol. 12 of 12.

After this resentencing, McKinley filed numerous motions to correct the sentence in the state district court.[27]  On or about July 16, 2004, McKinley filed an "Application for Writ of Mandamus and/or Motion to Enforce" in the Louisiana Fifth Circuit Court of Appeal, complaining that the district court had failed to rule on his motions to correct sentence filed on June 7 and 22, 2004.[28]  The Louisiana Fifth Circuit transferred the writ application to the Louisiana Supreme Court, stating: "The Louisiana Supreme Court has exclusive jurisdiction of this application because relator was convicted and sentenced prior to July 1, 1982.  La. Const. Of 1974, Art. 5, Sec. 5(E).  Accordingly, this application is transferred to the Louisiana Supreme Court."[29]

On January 14, 2005, the Louisiana Supreme Court granted McKinley's writ application "for the sole purpose of transferring the application to the district court with instructions to the district judge to act on relator's motions to correct an illegal sentence filed on June 7 and June 22, 2004 . . . ."[30]

On March 21, 2006, McKinley was resentenced for the final time.  The state trial court's minute entry states in pertinent part:

---

[27]State Record Vols. 3, 4, 11 and 12.

[28]State Record Vol. 12 of 12.

[29]State ex rel. McKinley v. State, No. 2004-KH-886 (La. App. 5th Cir. 7/27/04); State Record Vol. 12 of 12.

[30]State ex rel. McKinley v. State, 889 So.2d 251 (La. 2005); State Record Vol. 12 of 12.

7

> The Defendant, OTIS R. MCKINLEY, appeared before the bar of the Court this day.
> The Defendant was represented by Philip Johnson.
> This commitment was amended on 3/21/06, original commitment dated 6/10/81, this matter was on a remand from the Supreme Court.
> The Defendant pleaded GUILTY under R.S. 15:529.1 . . . .
> The original sentence is vacated.  The Defendant is sentenced under Multiple Bill statute 15:529.1
> The Court sentenced the Defendant to imprisonment at hard labor for a term of 50 years.  Giving the Defendant credit for all time served.
> Sentence to be served without benefit of parole, probation, or suspension of sentence.[31]

The Louisiana Supreme Court shortly thereafter dismissed McKinley's pending challenges to his previous sentencing, which had been mooted by the trial court's re-sentencing, "at relator's request" by order in La. S. Ct. Case No. 2006-KH-0578.[32]

McKinley subsequently made two distinct attempts, by making various written submissions to all three levels of the Louisiana courts, to challenge this final March 21, 2006, re-sentencing, both of which were ultimately denied by the Louisiana Supreme Court.

The first of these final two state court challenges, ultimately addressed in La. S. Ct. Case No. 2007-KH-2001, began on August 19, 2007, when McKinley signed and dated a "Motion to Vacate an Illegal Sentence" and submitted it to the state trial court. Although the motion erroneously refers to a re-sentencing on March 21, 2007, it is clear

---

[31]State Record Vol. 12 of 12.

[32]State Record Vol. 12 of 12.

from its attachments that McKinley's challenge is to his March 21, 2006 sentence.[33] The

state trial court denied this motion with written reasons in a two-page order issued on

September 5, 2007.[34]

In September 2007, McKinley filed a writ application in the Louisiana Fifth

Circuit and a motion in the state trial court requesting a transcript of his March 21, 2006

re-sentencing hearing.  By order dated September 27, 2007, the Louisiana Fifth Circuit

responded to McKinley's application in that court for a supervisory writ of habeas

corpus, challenging the trial court's September 5, 2007, denial of his request for relief,

by transferring the appellate case to the supreme court stating:

> The Louisiana Supreme Court has exclusive jurisdiction of this application
> because relator was convicted and sentenced prior to July 1, 1982. La.
> Const. 1974, Art. V, § 5(E). The fact that relator was re-sentenced in 1996
> does not change the exclusive jurisdiction of the Supreme Court in this
> matter. See State v. Nash, 431 So.2d 127 (La. App. 2 Cir. 1983).
> Accordingly, this writ application is transferred to the Louisiana Supreme
> Court. [35]

In the Louisiana Supreme Court, where his application was then assigned La. S.

Ct. No. 07-KH-2001, McKinley filed a "Motion to Consolidate," signed by him on

December 3, 2007, and a "Writ for Immediate Release from a Writ of Habeas Corpus,"

---

[33]Id.

[34]Id.

[35]Id., La. 5th Cir. Order in Case No. 07-KH-668 dated 9/27/07.

9

signed by him on January 30, 2008.  At some point during that time, however, McKinley received a letter dated November 29, 2007, from the Office of the Judicial Administrator of the state trial court advising him that, although the court had issued an order on October 16, 2007, granting his motion to provide him with a transcript of the March 21, 2006 re-sentencing hearing, no transcript could be provided because "nothing was placed on the record that day."[36] Thus, McKinley filed a "Motion to Dismiss" in the Louisiana Supreme Court "because there is no transcript to litigate his claims," and then confirmed his request for dismissal in writing in response to a January 15, 2008, letter from the supreme court's central staff.[37]  Accordingly, the supreme court on March 7, 2008, dismissed its Case No. 07-KH-2001 "at relator's request."[38]

McKinley's second and final state court challenge to his March 21, 2006, re-sentencing was ultimately decided in 2010 in La. S. Ct. Case No. 2008-KH-2430. It was apparently commenced while McKinley's initial challenge to the same re-sentencing was already pending, when on October 30, 2007, McKinley signed and submitted to the state trial court a "Constructive Contempt Complaint and Motion to Vacate March 21st, 2006 Illegal Sentence."  In this and related filings, McKinley not only challenged the propriety

---

[36]Id., Letter of John Andressen to Otis McKinley, 11/29/07.

[37]State Record Vol. 12 of 12.

[38]Id., La. S. Ct. Case No. 2007-KH-2001, Order, 3/7/08.

of his March 21, 2006 resentencing in terms similar to those he had already separately asserted, but also alleged for the first time that his counsel in the trial court was not properly licensed to practice law.[39]

In December 2007, alleging that the "state district court had fail[ed] to rule on complainant's October 30, 2007, Complaint and Motion," McKinley filed two pleadings in the Louisiana Fifth Circuit: (1) "Constructive Contempt Complaint," which was assigned Fifth Circuit Case No. 07-KH-1003, alleging that his counsel at the March 21, 2006 re-sentencing had not been properly licensed to practice law; and (2) a "Petition for Writ of Habeas Corpus," which was assigned Fifth Circuit Case No. 07-KH-1020, asserting two grounds for relief; i.e., that his March 21, 2006 resentencing was improper and had not been recorded, leaving him with no transcript to use in support of his challenge; and that his counsel at that hearing was not properly licensed.

---

[39]McKinley had attempted to make this same claim concerning his counsel directly in the Louisiana Fifth Circuit without first raising it in the trial court when he filed a "Constructive Contempt Complaint" signed by him on October 9, 2007. However, the Fifth Circuit denied that application in an order dated October 19, 2007, apparently prompting McKinley's October 30, 2007 trial court filing. See State Record Vol. 12 of 12, La. 5th Cir. Case No. 07-KH-763 ("Relator asks this Court to again grant him an out-of-time appeal. The documents filed with this writ application do not show that relator has yet applied for relief on those grounds in the Twenty-Fourth Judicial District Court for Jefferson Parish. In cases like this one, a litigant must first apply for relief in the district court before applying for relief from this Court. Accordingly, this writ application is denied."). McKinley's claim concerning his counsel was the subject of a letter to him from Richard M. Tompson, Chief Public Defender for the 24th Judicial District, stating that there was no record that the named lawyer, Philip Johnson, had ever been appointed to represent McKinley, or that any lawyer by that name had worked for the Public Defender's Office for more than 20 years. State Record Vol. 12 of 12. Later, McKinley also filed a certificate dated April 3, 2009, by the executive director of the Louisiana State Bar Association stating that Philip Johnson had become an inactive member of the bar 18 years earlier, on April 3, 2009. Id.

As it had done with McKinley's previous writ application, on January 8, 2008, the Louisiana Fifth Circuit again transferred its Case No. 07-KH-1003 ("Constructive Contempt") to the Louisiana Supreme Court in an order almost identical to its earlier transfer order.[40] In addition, in response to a "Motion to Consolidate" filed by McKinley in the Louisiana Fifth Circuit on December 14, 2007, the appellate court issued a second order on January 8, 2008, in both of McKinley's Fifth Circuit Cases Nos. 07-KH-1003 and 07-KH-1020, transferring both writ applications and his motion to consolidate to the Louisiana Supreme Court.[41] Thus, as of January 2008, all aspects of McKinley's final state court proceeding challenging his conviction and incarceration were pending in the Louisiana Supreme Court as its Case No. 2008-KH-2430.

In that case in the Louisiana Supreme Court, McKinley made the following filings: on February 12, 2009, a "Supplement to Writ of Habeas Corpus" that he had signed on January 5, 2009; on March 30, 2009, a "Motion for Habeas Bond," that he had signed on March 16, 2009; on March 29, 2010, a "Motion for Clarification for March 21, 2006, Court Minute Entry under Case No. 80-2481," with a "mailing list" indicating that he had simultaneously sent the same materials to both the state trial and appellate courts; on May 28 and 29, 2010, two separate "Motion[s] to Transfer Writ of Habeas Corpus Under

---

[40]State Record Vol. 12, of 12, La. App. 5th Cir. Case No. 07-KH-1003, "Writ Granted," 1/8/08.

[41]State Record Vol. 12 of 12, La. App. 5th Cir. Case Nos. 07-KH-1003 and 07-KH-1020, Order, 1/8/08.

Docket Number 08-KH-2430," one signed by McKinley on May 10, 2009, and the other on May 24, 2009, complaining about the supreme court's delay in addressing his filings and seeking transfer of his habeas petitions to this federal court.[42]

On April 29, 2010, apparently in response to the "Motion for Clarification" McKinley had sent to all three Louisiana courts, the Louisiana Fifth Circuit Court of Appeal issued an order in its Case No. 10-KH-297, that stated:

> Writ Granted for Limited Purpose. As this Court previously noted, the Louisiana Supreme Court has exclusive jurisdiction in this matter because relator was convicted and sentenced prior to July 1, 1982. La. Const. 1974, Art. V, § 5(E); Otis R. McKinley v. Louisiana, 07-1020 (La. App. 5 Cir. 1/8/08); Otis R. McKinley v. Cooper, et al, 07-1003 (La. App. 5 Cir. 1/8/08); Otis R. McKinley v. Cooper, et al, 07-820 (La. App. 5 Cir. 11/28/07); Otis R. McKinley v. Cooper, et al, 07-763 (La. App. 5 Cir. 10/19/07); Otis R. McKinley v. Cooper, et al, 07-668 (La. App. 5 Cir. 9/27/07). Accordingly, this writ application is transferred to the Louisiana Supreme Court.[43]

On September 17, 2010, in its Case No. 2008-KH-2430, the Louisiana Supreme Court addressed all of McKinley's various filings seeking supervisory and/or remedial writs or other relief in connection with his March 21, 2006, re-sentencing in a one-word order: "Denied."[44]

---

[42]St. Rec. Vol. 12 of 12.

[43]St. Rec. Vol. 4 of 12. La. App. 5th Cir. Case No. 10-KH-297, Order, 4/21/10.

[44]St. Rec. Vol. 12 of 12, State ex rel. McKinley v. State, 45 So.3d 1036 (La. 2010).

13

II.     FEDERAL HABEAS PETITION

More than one year later, on December 3, 2012, the clerk of this court filed McKinley's federal habeas corpus petition[45] in which he asserts the following claims: (1) He is being unconstitutionally detained pursuant to the "March 21, 2006, false sentencing procedure," and he was denied his right to a "full and [f]air hearing . . . concerning the March 21, 2006, false sentencing procedure."[46]  (2) The prior conviction used to support his habitual offender adjudication was invalid.  The State filed a response in opposition to McKinley's petition in which it contends that the petition is untimely and that McKinley has failed to exhaust his state court remedies.[47]  McKinley filed a traverse[48] to the State's response.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[49] and

---

[45]Rec. Doc. No. 1.

[46]Id. at pp. 14 and 15.

[47]Rec. Doc. No. 7.

[48]Rec. Doc. No. 13.

[49]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become

14

applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to McKinley's petition which, for reasons discussed below, is deemed filed in this federal court on October 10, 2012.[50]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

For the reasons set forth below, I find that McKinley's petition was <u>not</u> timely filed in this court.

---

effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[50]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). McKinley dated the signature on the memorandum in support of his petition on October 10, 2012. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he submitted his petition on the wrong form, using the form for filing a petition under 28 U.S.C. 2241, rather than the form for filing a petition under § 2254, does not alter the application of the federal mailbox rule to his pro se petition. A pro se prisoner's failure to abide by court filing requirements does not preclude the application of the mailbox rule. <u>See e.g.</u>, <u>Cousin v. Lensing</u>, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the required filing fee at the time of mailing) (citing <u>Spotville</u>, 149 F.3d at 374).

IV.     STATUTE OF LIMITATIONS

The AEDPA imposes a one-year limitations period that runs from the latest of four dates.  In this case the pertinent date is "the date on which the <u>judgment</u> became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (emphasis added).  "'[F]inal judgment in a criminal case means sentence.  The sentence is the judgment.'" <u>Scott v. Hubert</u>, 635 F.3d 659, 665 (5th Cir. 2011) (quoting <u>Burton v. Stewart</u>, 549 U.S. 147, 156 (2007) (per curiam) (quoting <u>Berman v. United States</u>, 302 U.S. 211, 212 (1937)).  Thus, "AEDPA's one-year limitations period does not be[gin] to run on a petitioner 'until both his conviction <u>and</u> sentence' have become final." <u>Id</u>.  (emphasis original) (quoting <u>Burton</u>, 549 U.S. at 156-57).

McKinley's conviction was upheld on direct appellate review. In response to McKinley's numerous post-conviction challenges spanning a period of decades, he was <u>re</u>sentenced twice.  His final re-sentencing occurred on March 21, 2006.  Thus, affording McKinley the broadest possible AEDPA timeliness interpretation, March 21, 2006, is the latest date that McKinley's judgment could have become final and his one-year AEDPA statute of limitations could have commenced to run. The one-year prescriptive period, however, is tolled during the time a properly filed application for collateral review with respect to the pertinent judgment is pending.  28 U.S.C. § 2244(d)(2).  Assuming that

McKinley's applications for review of his March 21, 2006, resentencing were "properly filed," any tolling effect resulting from those filings ceased on September 17, 2010, when his final applications were denied by the Louisiana Supreme Court and nothing properly filed by McKinley remained pending in the state courts.[51] Thus, on September 18, 2010, McKinley's AEDPA statute of limitations commenced to run, expiring one year later, on Monday, September 19, 2011.[52]  McKinley's instant federal habeas petition is <u>deemed</u> filed under the mailbox rule on October 10, 2012, more than one year after his state proceedings ended.  Accordingly, McKinley's habeas petition is time-barred, unless the one-year AEDPA statute of limitations period was tolled in either of the two ways recognized by the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  <u>Pace</u>, 544 U.S. at 418; <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 1164 (2001); <u>Cantu-Tzin v. Johnson</u>, 162 F.3d 295, 299 (5th Cir. 1998); <u>Davis v. Johnson</u>, 158 F.3d 806, 810

---

[51]<u>State ex rel. McKinley v. State</u>, 45 So.3d 1036 (La. 2010); State Record Vol. 12 of 12.

[52]The last day fell on Sunday, September 18, 2011. Therefore, the finality date is the next business day, Monday, September 19, 2011. Fed. R. Civ. P. 6(a)(1)(C) (weekends are not included in the calculation of period when it would be the last day of the period); La. Code Crim. P. Art. 13 (weekends are not included in the calculation of period when it would be the last day of the period).

(5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999).  Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  <u>Pace</u>, 544 U.S. at 418-19; <u>Cousin</u>, 310 F.3d at 848.

 McKinley has not asserted any reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent.  <u>See</u> <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to file a timely federal petition and in failing to communicate with the client during a period of years in spite of the client's letters); <u>Hardy v. Quarterman</u>, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir.

1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)");  Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999));  Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).  The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies also are not other collateral review for purposes of the tolling calculation. Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling

purposes); <u>Brown v. Cain</u>, 112 F. Supp.2d 585, 587 (E.D. La. 2000), <u>aff'd</u>, 239 F.3d 365 (5th Cir. 2000); <u>Gerrets v. Futrell</u>, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); <u>Jones v. Johnson</u>, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); <u>Grayson v. Grayson</u>, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

Giving McKinley the benefit of every doubt, all of his state court post-conviction proceedings challenging the March 21, 2006, re-sentencing that he now challenges in this court were terminated by the Louisiana Supreme Court's September 17, 2010, order denying all relief. The state court record contains nothing indicating that McKinley had any other matter of any kind, whether properly or improperly filed, pending in any state court thereafter. Under the mailbox rule, the instant federal habeas petition is deemed filed in this court on October 10, 2012, more than one year after his state court proceedings ended.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Otis R. McKinley for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED**

and **DISMISSED WITH PREJUDICE** as time-barred, because it was filed beyond the one-year AEDPA statute of limitations.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[53]

New Orleans, Louisiana, this _____17th_____ day of July, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[53]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.